**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 22-2045

ERIN OSMON,

        Plaintiff - Appellant,

  v.

UNITED STATES OF AMERICA,

        Defendant - Appellee.

Appeal from the United States District Court for the Western District of North Carolina, at Asheville. Martin K. Reidinger, Chief District Judge. (1:21-cv-00353-MR-WCM)

Argued: March 7, 2023                            Decided: April 18, 2023

Before THACKER and HEYTENS, Circuit Judges, and Joseph DAWSON, III, United States District Judge for the District of South Carolina, sitting by designation.

Reversed and remanded by published opinion. Judge Heytens wrote the opinion, in which Judge Thacker and Judge Dawson joined.

**ARGUED:** Jonathan W. Corbett, CORBETT RIGHTS, P.C., Los Angeles, California, for Appellant. Daniel Aguilar, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee. **ON BRIEF:** Brian M. Boynton, Principal Deputy Assistant Attorney General, Sharon Swingle, Civil Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C.; Dena J. King, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Charlotte, North Carolina, for Appellee.

TOBY HEYTENS, Circuit Judge:

May people who claim they were assaulted by Transportation Security Administration screeners sue the federal government under the Federal Tort Claims Act (FTCA)? Joining the Third and Eighth Circuits, we hold the answer is yes.

I.

As all commercial air travelers must, plaintiff Erin Osmon passed through security at Asheville Regional Airport before a scheduled flight. A TSA screener told Osmon "the body scanner alarmed on her and that she would need to submit to a 'groin search.'" JA 9. During the resulting interaction, Osmon alleges the screener forced her to spread her legs wider than necessary and fondled her genitals twice.

Osmon sued the federal government under the FTCA, alleging one count of battery. A magistrate judge recommended dismissing Osmon's suit for lack of subject matter jurisdiction in a detailed memorandum devoted solely to whether the FTCA waives sovereign immunity for the type of claim Osmon brought. The district court adopted the magistrate judge's recommendation. The court concluded it need not review the recommendation de novo because Osmon failed to object with sufficient specificity and, in any event, "the Magistrate Judge's proposed conclusions of law are correct and are consistent with current case law." JA 155.

We review de novo "[w]hether a claim falls within the purview of the Federal Tort Claims Act." *Clendening v. United States*, 19 F.4th 421, 426 (4th Cir. 2021). We also review de novo the legal question of whether Osmon forfeited her right to de novo review

2

of the magistrate judge's recommendation. See *Solis v. Malkani*, 638 F.3d 269, 273 (4th Cir. 2011).

## II.

The district court erred in concluding Osmon did not adequately preserve her claim for its (and thus our) review. The Federal Magistrates Act only requires district courts to "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). The reason for this objection requirement is straightforward: Requiring district judges to consider afresh everything magistrate judges do—even when no party objects—would duplicate effort and "waste[]" considerable "judicial resources." *United States v. Midgette*, 478 F.3d 616, 622 (4th Cir. 2007). For that reason, a party wishing to avail itself of its right to de novo review must be "sufficiently specific to focus the district court's attention on the factual and legal issues that are truly in dispute." *Id.* (quotation marks omitted).

Osmon easily cleared that modest bar. In response to the magistrate judge's recommendation, Osmon filed a two-and-a-half page "Objection to Memorandum and Recommendation" framing a "pure question of law," the resolution of which controlled the outcome of a single dispositive motion. JA 138. That document identified areas where Osmon and the government agreed and summarized the parties' competing positions. It also cited cases from other circuits that have considered the issue and pointed out the "only circuit court to agree with the government's view did so for different reasons than" the magistrate judge recommended. JA 139. There was, in short, no doubt about "the true

3

ground for [Osmon's] objection" to the magistrate judge's recommendation. *Midgette*, 478 F.3d at 622. Nothing more was required.

The district court faulted Osmon for not "mak[ing] any specific objections" to the magistrate judge's reasoning and "simply summariz[ing]" the arguments that "ha[d] been presented before." JA 155 (quotation marks omitted). But the statute requires an "objection" rather than a freestanding brief or memorandum of law, and a party need not frame its arguments anew when it objects. 28 U.S.C. § 636(b)(1). Such a requirement would require litigants to walk a tightrope between refining their existing arguments just enough to preserve them for de novo review but not so much to risk having them considered forfeited because they were never presented to the magistrate judge in the first place. The statute creates no such trap.

### III.

We also conclude the district court erred in dismissing Osmon's complaint for lack of subject matter jurisdiction. In so doing, we join the Third and Eighth Circuits in holding the FTCA permits people who allege they were assaulted by TSA screeners to sue the federal government. See *Iverson v. United States*, 973 F.3d 843 (8th Cir. 2020); *Pellegrino v. Transportation Sec. Admin.*, 937 F.3d 164 (3d Cir. 2019) (en banc). Because the majority and dissenting opinions in the Third and Eighth Circuit cases have thoroughly canvassed the relevant issues, we focus on those that strike us as most persuasive and determinative.

The dispute before us is a narrow one. Everyone agrees the federal government is normally immune from suit, that Congress may waive that immunity, and that "the terms of the United States' consent to be sued . . . define [a] court's jurisdiction to entertain the

4

suit." *Federal Deposit Ins. Co. v. Meyer*, 510 U.S. 471, 475 (1994) (alterations and quotation marks omitted). Everyone agrees the FTCA contains a waiver and permits people injured "by the . . . wrongful act or omission" of on-duty federal employees to sue the government in situations where state law would make a private employer liable. 28 U.S.C. § 1346(b)(1).[1] Everyone agrees this waiver has various exceptions, including one that generally precludes suits for "[a]ny claim arising out of assault [or] battery." § 2680(h). And finally, everyone agrees this exception has its own exception, which allows claims for "assault" or "battery" arising out of "acts or omissions of investigative or law enforcement officers of the United States Government." *Id.* These last two provisions are contained in a single statutory subsection that we, like the Supreme Court, will call "the law enforcement proviso." *Millbrook v. United States*, 569 U.S. 50, 54 (2013).

The statutory text, the parties' concessions, and Supreme Court authority further narrow the zone of disagreement. First, Congress has defined "investigative or law enforcement officer" as "mean[ing] any officer of the United States who is empowered by law to execute searches, to seize evidence, or to make arrests for violations of Federal law." 28 U.S.C. § 2680(h). As a result, the government misses the mark with its discussion about whether TSA screeners are "law enforcement officers" in some general sense. "When," as here, "a statute includes an explicit definition of a term, we must follow that definition, even if it varies from [the] term's ordinary meaning." *Van Buren v. United States*,

---

[1] The government does not deny the TSA screener named in the complaint was acting within the scope of her employment.

141 S. Ct. 1648, 1657 (2021) (quotation marks omitted). And, at any rate, the defined term is "investigative *or* law enforcement officer," so there must be some "investigative . . . officers" who are not "law enforcement officers." 28 U.S.C. § 2680(h) (emphasis added).

Second, the government has not challenged the magistrate judge's conclusion that TSA screeners are "officers of the United States" within the meaning of the law enforcement proviso. This means the only appellate decision favoring the government's position—an unpublished and unsigned decision issued without oral argument—rested on grounds the government no longer advances. See *Corbett v. Transportation Sec. Admin.*, 568 Fed. Appx. 690, 701 (11th Cir. 2014) (per curiam) (holding TSA screeners are not "officers of the United States" and declining to reach whether they otherwise would be "investigative or law enforcement officers").

Third, the Supreme Court has emphasized that "[t]he plain text" of the law enforcement proviso "confirms that Congress intended immunity determinations to depend on a federal officer's legal authority, not on a particular exercise of that authority." *Millbrook*, 569 U.S. at 56. For that reason, the question is not whether the harm Osmon alleges "occur[red] in the course of executing a search, seizing evidence, or making an arrest." *Id.* Instead, it is what the TSA screener had the legal authority to do.[2]

---

[2] For similar reasons, we need not decide which airport activity is or is not a "search" within the meaning of the law enforcement proviso (or the Fourth Amendment). We need ask only whether TSA screeners are allowed to do at least one thing that qualifies under the statute.

6

This appeal thus comes down to a single controlling question: Are TSA screeners "empowered by law to execute searches, to seize evidence, or to make arrests for violations of Federal law"? 28 U.S.C. § 2680(h). If yes, Osmon's suit may proceed. If no, it may not.

We conclude the answer is yes. Because the law enforcement proviso "speaks in the disjunctive," TSA screeners need be empowered only to do one of the three listed things— that is, execute searches, seize evidence, *or* make arrests. *Carolina Youth Action Project v. Wilson*, 60 F.4th 770, 786 (4th Cir. 2023). Congress has granted TSA the authority to "screen[ ] . . . all passengers and property . . . that will be carried aboard a passenger aircraft," 49 U.S.C. § 44901(a), and it has defined such "screening" (at least in the context of cargo) as including a "physical examination" or a "physical search." § 44901(g)(4). What is more, federal regulations require an "aircraft operator" to "refuse to transport" any person "who does not consent to a search or inspection of his or her person" by TSA screeners. 49 C.F.R. § 1544.201(c)(1). As a matter of "plain language," that would seem to be the end of the matter. *Millbrook*, 569 U.S. at 55; see *Terry v. Ohio*, 392 U.S. 1, 16 (1968) (describing it as "nothing less than sheer torture of the English language to suggest that a careful exploration of the outer surfaces of a person's clothing all over his or her body in an attempt to find weapons is not a 'search.'"); Oral Arg. 16:45–17:10 (government counsel acknowledging "a TSA pat-down" is a search).

The government disagrees, insisting the relevant language covers only searches that are part of "criminal law enforcement." U.S. Br. 21 (quotation marks omitted). Per the government, the law enforcement proviso permits suits for battery only when the officer

7

could perform "a criminal, investigatory search" rather than "an administrative search," which takes the form of an "inspection" or "screening." U.S. Br. 26.

The problem with the government's argument is that it reprises a tactic the Supreme Court has already rejected: "read[ing] into the text additional limitations designed to narrow the scope of the law enforcement proviso." *Millbrook*, 569 U.S. at 55. The word "criminal" appears nowhere in the law enforcement proviso—let alone as a modifier of "searches." See 28 U.S.C. § 2680(h). Here, as elsewhere, we "may not narrow a provision's reach by inserting words Congress chose to omit." *Lomax v. Ortiz-Marquez*, 140 S. Ct. 1721, 1725 (2020).

Undeterred, the government asserts the limits it seeks are implicit in the overall provision. Invoking the principle that "words grouped in a list should be given related meanings," the government says the law enforcement proviso's references to "seiz[ing] evidence, or . . . mak[ing] arrests for violations of Federal law clearly refer to police powers in criminal investigations." U.S. Br. 22 (quotation marks omitted). And so, it continues, the statutory words "execute searches" also must be so limited. *Id.*

We are unpersuaded. True, the words "make arrests" are limited to the criminal context, and "seiz[ing] evidence" is often—and likely most often—used in that context. But government officials investigate plenty of violations of law that are civil, not criminal, in nature, and there is nothing linguistically strange about using the words "seize evidence" in that context. The government's premise, in short, does not hold.

The government also seeks a toehold in the word "execute," citing various statutes and judicial decisions using that term in the context of "executing a search warrant" or

8

"execut[ing] the warrant." U.S. Br. 25 (quoting *Los Angeles Cnty. v. Rettele*, 550 U.S. 609, 614 (2007) (first quotation), and *United States v. Ramirez*, 523 U.S. 65, 69 (1998) (second quotation)). But this statute—unlike all the others referenced in the opinion the government relies on for this point—does not contain the word "warrant." See *Pellegrino*, 937 F.3d at 185 (Krause, J., dissenting) (citing 18 U.S.C. §§ 2231(a), 2234, 3109, and 22 U.S.C. § 2709(a)(2)); see also U.S. Br. 5–6 (citing 49 U.S.C. § 114(p)(2)(C), which also references "seek[ing] and execut[ing] warrants"). Nor is this a trivial distinction, because the ability to execute a *search* does not necessarily imply power to execute a *search warrant*. See, *e.g.*, *New Jersey v. T.L.O.*, 469 U.S. 325, 341–43 (1985) (school official may search student property under certain circumstances). Once again, we decline to "insert[] words Congress chose to omit." *Lomax*, 140 S. Ct. at 1725.

Nor are we swayed by the government's reliance on the statutory phrase "for violations of Federal law." 28 U.S.C. § 2680(h). Those words do not follow "execute searches" but come at the end of the third, disjunctive alternative. See 28 U.S.C. § 2680(h) ("empowered by law to execute searches, to seize evidence, or to make arrests for violations of Federal law"). For that reason, we are skeptical whether "for violations of Federal law" modifies "to execute searches" because it would violate "the basic intuition that when a modifier appears at the end of a list, it is easier to apply that modifier only to the item directly before it." *Lockhart v. United States*, 577 U.S. 347, 351 (2016); accord *Facebook, Inc. v. Duguid*, 141 S. Ct. 1163, 1170 (2021) ("a limiting clause or phrase . . . should ordinarily be read as modifying only the noun or phrase that it immediately follows" (quotation marks omitted)).

9

But none of this skirmishing about whether "for violations of Federal law" modifies "execute searches" really matters because TSA searches encompass looking for such violations. To cite just one example, federal law makes it a crime to "attempt[]" to bring onto an airplane "a concealed dangerous weapon" or "an explosive or incendiary device." 49 U.S.C. § 46505(b)(1) & (3). And—to state the obvious—those sorts of items are well within the heartland of what TSA screeners are looking for when they search people seeking to board airplanes. See, *e.g.*, 49 C.F.R. § 1540.5 (defining "[s]creening location" as "each site at which individuals or property are inspected for the presence of weapons, explosives, or incendiaries").

The government also makes a more global argument. Reminding us that the FTCA waives the immunity it would otherwise enjoy from suit, the government asks us to apply the principle that "[a]ny ambiguities in the statutory language are to be construed in favor of immunity." *Federal Aviation Admin. v. Cooper*, 566 U.S. 284, 290 (2012). Osmon disagrees, citing a Supreme Court decision stating this "general rule" is "unhelpful in the FTCA context" because the statute "waives the Government's immunity from suit in sweeping language" and "unduly generous interpretations of the exceptions run the risk of defeating the central purpose of the statute." *Dolan v. United States Postal Serv.*, 546 U.S. 481, 491–92 (2006) (quotation marks omitted). The government replies by a citing a post-*Dolan* decision in which this Court—without referencing *Dolan*—repeated a pre-*Dolan* statement that, even in the FTCA context, "waivers of sovereign immunity must be strictly construed." *Wood v. United States*, 845 F.3d 123, 127 (4th Cir. 2017) (citing *Welch v. United States*, 409 F.3d 646, 651 (4th Cir. 2005)). The government also relies on a Ninth

10

Circuit decision stating *Dolan* applies only where courts are interpreting "an exception to the FTCA's waiver of sovereign immunity" but not where a court is "interpret[ing] an exception to [an] exception." *Foster v. United States*, 522 F.3d 1071, 1079 (9th Cir. 2008).

In the end, we need not hack through this methodological underbrush to decide this case. For the reasons already explained, we conclude the "plain language" of this statute supplies a clear answer. *Millbrook*, 569 U.S. at 55. As in *Millbrook*—which also involved the FTCA and referenced no presumptions or rules of strict construction—we need go no further.

\*      \*      \*

We recognize that when Congress added the law enforcement proviso to the FTCA in 1974, it was not thinking about people who work for an agency that was not created until more than a quarter of a century later. See Pub. L. No. 93–253, § 2, 88 Stat. 50 (Mar. 16, 1974) (adding law enforcement proviso); Aviation and Transportation Security Act, Pub. L. No. 107–71, 115 Stat. 597 (Nov. 19, 2001) (creating TSA). "But . . . it is ultimately the provisions of our laws rather than the principal concerns of our legislators by which we are governed." *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 79 (1998). And "the fact that a statute can be applied in situations not expressly anticipated by Congress does not demonstrate ambiguity. It demonstrates breadth." *Pennsylvania Dep't of Corr. v. Yeskey*, 524 U.S. 206, 212 (1998) (quotation marks omitted). Because the words of this statute cover the claim Osmon brought, we reverse the district court's judgment and remand for further proceedings.

*SO ORDERED*

11